# EXHIBIT D

the person having the knife.

MR. MAHONEY: Let me go to that for a minute, if I may.

Q Now taking a look at Plaintiff's 5, I see the Crime Alert reads that "the victims stated that a knife was shown during the incident"; is that correct?

A That's correct.

Q The Crime Alert as we've mentioned two or three times also identifies Christopher Havlick as the assailant; is that correct?

A That is correct.

Q Before the Crime Alert was published you had knowledge or did you have knowledge that Havlick was being charged with violations of three Student Code sections?

A To the best of my recollection I did.

Q You knew that one of those code sections related to having a knife?

A I did.

Q You knew that before the Crime Alert was published that the Student Disciplinary Board acquitted him of the knife?

A I did not.

Q I thought you said you did. I'm sorry. Before the Crime Alert was published, meaning Plaintiff's 5, you did not

have knowledge of the Student Board decision?
A No.
Q You did not?
A No.
Q Did you inquire as to whether the Student Board had made a determination as to what infractions if any Havlick was guilty of?
A No.
Q Why is that?
A It's not our practice to do that. Our obligation is to make a timely report. I don't usually check and Sandy doesn't check to see if there has been anything further in the proceedings.
Q Maybe, because I can confuse myself, didn't you tell me three or four minutes ago that you were aware, not necessarily of the results, but that the Student Disciplinary Board had made a decision before the Crime Alert was published or did I misunderstand?
A I was not aware before the Crime Alert was published that the Student Disciplinary Board had made a decision. I became aware of the Student Disciplinary Board's decision sometime much later. However, my records show that in fact the hearing took place before the Crime Alert was published.

Q When you say your records show -- and I think that's where I jumped to conclusions, that the hearing decision was made before the Crime Alert -- what records are you talking about?

A There is, and you have a copy of an e-mail from Sandy Lawrence that asks Safety and Security to go ahead and post the Crime Alert, that is sometime a little after 4:00 in the afternoon on September 21st. So that's when the Crime Alert would have been posted. I subsequently learned that the hearing had been scheduled for earlier in that day.

MR. TARANTINO: I think the confusion is you used the term "my records".

MS. BENNETT: My records, the University's records, I'm sorry.

Q Oh, I see. So what you have done since all of this, what you have done at some point is pieced together the fact that the Crime Alert would have been published on or shortly after 4 p.m. on September 21st; whereas, other records that you've had access to since the publication of the Crime Alert would suggest that the decision by the Board was made prior thereto?

A Exactly.

Q But that's your own personal knowledge, the fact is that

the University itself, Johnson & Wales University which consists of you and hundreds and thousands of other people, students, employees and so forth, the University determined that Havlick didn't have a knife through this disciplinary procedure before the University through its Security Department issued the Crime Alert?

A It's hard for me to talk about knowledge without talking about individuals. Clearly, the individuals in the Student Conduct office knew to the best of my knowledge before 4:00 that they had not found Mr. Havlick responsible for having a knife. The Safety and Security Department knew after 4:00 that it was posting the Crime Alert that has the statement in it that "the victims stated that a knife was shown during the incident".

Q Was the fact that a knife was allegedly involved as reported in this Crime Alert a factor in the publishing of the Crime Alert?

A It was one of the factors; but even if no knife had been shown, we would have reached the same conclusion.

Q You're saying that now, but, in fact, prior to the publication of this Crime Alert you didn't consider that because you worked under the assumption that a knife was involved. What you're doing now is retroactively saying what you feel you would have done had you been aware no

knife was involved?

A Right, the report indicated a knife, and it indicated a serious injury, both of those played a role in my determination that it was a crime that needed to be, for which we needed to think about the Crime Alert.

Q You since found out, and I realize it was months later, that Havlick was acquited of assault charges on a criminal level; is that true? Is it true you found that out is all I'm asking you?

A I found out that he was convicted by a judge and later acquitted by a jury.

Q But you're an attorney, this is why I'm asking you the question, as an attorney are you or you not aware of the fact that a District Court conviction of a misdemeanor can be appealed?

A Yes.

Q As an attorney, are you or are you not aware of the fact that the trial that will take place upon appeal will be in the Superior Court?

A Yes.

Q Are you or are you not aware of the fact that the trial on appeal in the Superior Court is a trial De Novo?

A No, I'm not aware because it's not an area of law I practice in.