UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHRISTOPHER HAVLIK | : | |
| | : | |
| Vs. | : | C.A. No. 05-510ML |
| | : | |
| JOHNSON & WALES UNIVERSITY | : | |

**JOHNSON & WALES UNIVERSITY'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Johnson & Wales University moves for summary judgment on all counts of the Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. Rule 56 and Local Rule (Civil) 56. There are no material facts in dispute and as a matter of law the Plaintiff is unable to establish that he can recover on any claim.

The grounds for this motion are set forth in the accompanying memorandum of law.

Dated: November 29, 2006

DEFENDANT,
JOHNSON & WALES UNIVERSITY
By its attorneys,

/s/ John A. Tarantino

JOHN A. TARANTINO, #2586
jtarantino@apslaw.com
PAUL V. CURCIO, #1965
pcurcio@apslaw.com
KATY A. HYNES, #6659
khynes@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHRISTOPHER HAVLIK | : | |
| | : | |
| Vs. | : | C.A. No. 05-510ML |
| | : | |
| JOHNSON & WALES UNIVERSITY | : | |

# MEMORANDUM OF LAW IN SUPPORT OF JOHNSON & WALES UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT

Defendant Johnson & Wales University ("JWU") submits this memorandum of law in support of its motion for summary judgment on all counts of the Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. Rule 56 and Local Rule (Civil) 56. There are no material facts in dispute and as a matter of law the Plaintiff is unable to establish that he can recover on any claim.

## I. BRIEF OVERVIEW

On December 7, 2005 the Plaintiff filed a two-count complaint in this matter, alleging defamation and breach of contract. On October 18, 2006, after the close of discovery, the Plaintiff filed a Motion to Amend Complaint to add a punitive damages claim to the defamation action. After hearing on November 15, 2006, this Court granted Plaintiff's motion to amend.

JWU is entitled to summary judgment on all counts of Plaintiff's Amended Complaint. First, the Plaintiff cannot prevail as a matter of law on Count I, the defamation claim, because the uncontradicted evidence in the record reveals that the

statements at issue are true. In addition, even if the statements at issue are not true, which JWU expressly denies, JWU cannot be held liable because it has a qualified privilege, and the Plaintiff has not alleged, and could not prove, that JWU acted with the malice requisite to overcome its qualified privilege.

The defamation claim arises from a federally mandated "Crime Alert" published on September 21, 2004 by the JWU Department of Campus Safety and Security in response to an assault in an area near a JWU campus. The Crime Alert states, in pertinent part, that it was "… stated a knife was shown during the incident" and the "assailant was identified as Christopher Havlik." (*Statement of Undisputed Facts*, para. 15) These statements are true. In publishing these statements in the Crime Alert, the Department of Campus Safety and Security relied on a JWU Unusual Incident Report which was supported by a Providence Police Department Witness Statement. (*Statement of Undisputed Facts*, para. 16) Accordingly, because the statements at issue are true, or in the alternative, because JWU has a qualified privilege and because there is no record evidence to overcome the privilege, summary judgment should be entered against the Plaintiff and on behalf on JWU as to Count I of the Amended Complaint.

Second, the Plaintiff cannot prevail as a matter of law on the punitive damages claim, because he has neither alleged nor provided evidence to support the requisite elements to succeed on such a claim. The Plaintiff bases his punitive damages claim on an argument that JWU published a false statement with regard to the Plaintiff, knowing it to be false. *See* Memorandum of Law in support of Plaintiff's Motion to Amend Complaint at p.1. This argument is devoid of merit because the only evidence in the record makes plain that the statement published by JWU was true. In addition, even if

the statement could somehow be considered "false," which JWU expressly denies, such a publication would not constitute the malice requisite to support a claim for punitive damages under constitutional law, or the more stringent "conduct amounting to criminality" standard under Rhode Island law. Accordingly, summary judgment should be entered against the Plaintiff and on behalf on JWU as to Count II of the Amended Complaint.

Finally, the Plaintiff cannot prevail as a matter of law on the breach of contract claim because the uncontradicted record evidence shows that the disciplinary process that JWU provided to the Plaintiff afforded him with at least the process to which he is entitled under existing law. In fact, the Plaintiff was likely afforded greater rights than those required by law. Additionally, the uncontroverted testimony of the Plaintiff himself details the rights and procedures that JWU provided to the Plaintiff throughout the disciplinary and appeal processes. Accordingly, summary judgment should be entered against the Plaintiff and on behalf on JWU as to Count III of the Amended Complaint.

## II. <u>UNDISPUTED FACTS</u>

In the early morning hours of Friday, September 17, 2004, at approximately midnight, the Providence Police Department responded to an incident on Richmond Street in Providence. (*Statement of Undisputed Facts*, para. 1). During the course of a verbal altercation, the Plaintiff struck Donald Ratcliffe, causing him to fall to the ground. (*Statement of Undisputed Facts*, para. 2). The police requested a rescue to provide assistance to the victim, Mr. Ratcliffe, who suffered serious head injuries. (*Statement of Undisputed Facts*, para. 3). The police investigated the incident and took witness statements from, among others, Elyse M. Okolita. (*Statement of Undisputed Facts*,

para. 4). Ms. Okolita reported to the police that the Plaintiff had a knife in his hand during the incident. (*Statement of Undisputed Facts*, para. 5). The police charged the Plaintiff with assault. (*Statement of Undisputed Facts*, para. 6).

Because both the victim and the Plaintiff were students at JWU, the incident was reported to the Department of Campus Safety and Security at JWU. (*Statement of Undisputed Facts*, para. 7). In response to the report of the assault, Officer Rebecca Steele, a member of the Department of Campus Safety and Security conducted an internal investigation, interviewed witnesses, and generated an Unusual Incident Report. *(Statement of Undisputed Facts*, para. 8). On Monday, September 20, 2004, the JWU Student Conduct Office issued a Notice of Suspension (temporary) to the Plaintiff, alleging violations of student conduct regulations; specifically, assault of another student, possession of a knife, and conduct that would violate federal, state or local laws. (*Statement of Undisputed Facts,* para. 9). This notice was hand-delivered to the Plaintiff at approximately 2:00 p.m., and provided notice of the Plaintiff's right to a hearing to be held the following morning. (*Statement of Undisputed Facts*, para. 10).

On Tuesday, September 21, 2004, the Plaintiff's hearing took place. (*Statement of Undisputed Facts*, para. 11). A Student Conduct Hearing Officer and two panel members conducted the hearing. (*Statement of Undisputed Facts*, para. 12). The Plaintiff exercised his right to explain what happened in his view to the members of the panel. (*Statement of Undisputed Facts*, para. 13). The Plaintiff also exercised his right to call witnesses to testify on his behalf. (*Statement of Undisputed Facts*, para.14).

Later that same day, the Department of Campus Safety and Security posted a Crime Alert. (*Statement of Undisputed Facts*, para. 15). Consistent with the Clery Act,

the Crime Alert was issued based upon the JWU Unusual Incident Report and was consistent with the Providence Police witness statements. It was not based on what happened at the disciplinary hearing. (*Statement of Undisputed Facts*, para. 16). At the time that the Department of Campus Safety and Security issued the Crime Alert, it had no knowledge of what had transpired at the Plaintiff's disciplinary hearing with the Office of Student Conduct. (*Statement of Undisputed Facts*, para. 17).

The following day, September 22, 2004, the Plaintiff received a decision from the Student Conduct Office, indicating that after hearing from the Plaintiff, as well as the witnesses, the panel found the Plaintiff responsible for assault of another student and conduct that would violate federal, state or local laws. (*Statement of Undisputed Facts*, para. 18). The panel found the Plaintiff not responsible for possession of a knife. (*Statement of Undisputed Facts*, para. 19). The sanction imposed was dismissal from JWU. (*Statement of Undisputed Facts*, para. 20). The Student Conduct Hearing Decision informed the Plaintiff of his right to an appeal. (*Statement of Undisputed Facts*, para. 21). On September 27, 2004, the Student Affairs Office received a letter from the Plaintiff, indicating his desire to exercise his right to an appeal. (*Statement of Undisputed Facts*, para. 22). On September 29, 2004, after conducting a review of the record and the procedure, Veera Sarawgi, the JWU Student Conduct Office Appeal Officer, issued an Appeal Review Notice, affirming the decision of the Conduct Review Hearing. (*Statement of Undisputed Facts*, para. 23).

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion" is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), *cert. denied*, 515 U.S. 1103 (1995)(citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A fact is material if it "has the capacity to sway the outcome of the litigation under the applicable law." *Id.* "The moving party bears the burden of showing the Court that no genuine issue of material fact exist. *LaPlante v. OneBeacon Insurance Group*, No. Civ.A.05-496ML, 2006 WL 3004750 (D.R.I. Oct. 20, 2006).

"Once the movant has made the requisite showing, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading, but … must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. "Evidence that is 'merely colorable or is not significantly probative' cannot deter summary judgment." *Bartolomeo v. Liburdi*, No. C.A. 97-624ML, 2000 WL 621093, at *4 (D.R.I. Apr. 10, 2000)(citations omitted). "A mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax." *Garside v. Osco Drug, Inc*., 895 F.2d 46, 49 (1st Cir. 1990). Upon motion, "summary judgment is 'mandate[d] … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Continental*

*Casualty Co. v. Canadian Universal Insur. Co*., 924 F.2d 370 (1st Cir. 1991)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## IV. ARGUMENT

### A. The Defamation Count

The Plaintiff seeks to hold JWU liable for libel and slander arising from the Crime Alert published on September 21, 2004 by JWU in response to an assault in an area near a JWU campus. This claim fails as a matter of law because the uncontradicted evidence in the record makes plain that the statements at issue are true. In addition, even if the statements at issue are not true, which JWU expressly denies, JWU cannot be held liable because it has a qualified privilege, and the Plaintiff has not provided any evidence to suggest that JWU acted with the malice requisite to overcome its qualified privilege.

Under Rhode Island law, "when bringing a defamation action a plaintiff has the burden of proving that the defendant has communicated a 'false and defamatory' statement about the plaintiff." *Bartlett v. American Power Conversion Corp*., No. C.A. 05-084ML, 2006 WL 2709404 at *8 (D.R.I. Sept. 20, 2006)(quoting *Cullen v. Auclair*, 809 A.2d 1107, 1109, 10 (R.I. 2002)). "'A defamatory statement consists of '[a]ny words, if false and malicious, imputing conduct which injuriously affects a [person's] reputation, or which tends to degrade him [or her] in society or bring him [or her] into public hatred or contempt.'" *Id.* (quoting *Wilkinson v. State Crime Lab. Comm'n*, 788 A.2d 1129, 1142 (R.I. 2002)). "'To succeed in an action for defamation, the plaintiff must prove: (1) the utterance of a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault amounting to at least

negligence; and (4) damages.'" *Id.* (quoting *Mills v. C.H.I.L.D., Inc.*, 837 A.2d 714, 720 (R.I. 2003), *cert. denied*, 543 U.S. 1002 (2004)).

The plaintiff in this case apparently takes issue with two of the statements contained in the Crime Alert. The first statement at issue reads as follows: "The assailant was identified as Christopher Havlik." This statement is true. The record is replete with evidence that Christopher Havlik, the Plaintiff, was identified as being the assailant. *See* Providence Police Department Offense Report[1], Providence Police Witness Statement of Elyse Okolita[2], Providence Police Witness Statement of Donald Ratcliffe[3], JWU Unusual Incident Report[4]. As explained in the uncontradicted deposition testimony of Barbara Bennett, Chief Legal Counsel for JWU, the Crime Alert was issued based upon the Providence Police Department report, as well as the JWU internal investigation. *Statement of Undisputed Facts*, para. 16. The assailant was identified as Christopher Havlik. The Plaintiff can dispute whether or not he was indeed the assailant, or the Plaintiff can disagree with the decision by JWU to publish his name in the Crime Alert. The Plaintiff cannot, however, succeed on a defamation claim based upon the true statement that he was *identified* as being the assailant. No amount of Plaintiff's displeasure with the statement transforms it into a false publication. The record is replete with uncontested evidence that the statement is true: the Plaintiff was identified as the assailant. Because the Plaintiff fails to satisfy the first prong of the defamation test under Rhode Island law, there is no need to address the remaining elements, as there can be no unprivileged communication, fault, or damages without a false publication.

---

[1] Providence Police Department Offense Report is attached as Exhibit 1 to Statement of Undisputed Facts
[2] Witness Statement of Elyse Okolita is attached as Exhibit 4 to Statement of Undisputed Facts
[3] Witness Statement of Donald Ratcliffe is attached as Exhibit 3 to Statement of Undisputed Facts
[4] JWU Unusual Incident Report is attached as Exhibit 5 to Statement of Undisputed Facts

The second statement in the Crime Alert with which the Plaintiff apparently takes issue is that it was "stated a knife was shown during the incident." This statement is also true. *See Statement of Undisputed Facts*, para. 5. The record is plain that Ms. Okolita reported to the Providence Police that the Plaintiff was holding a knife during the altercation. Whether the Plaintiff *in fact*, possessed a knife during the incident is irrelevant. The Crime Alert publication states simply that it was "stated a knife was shown." This is true.

In support of his punitive damages claim, which will be discussed more fully *infra*, the Plaintiff argues that JWU knew that the Plaintiff did not possess a knife and knowingly published such statement anyway. The Plaintiff refers to the Student Conduct Hearing Panel finding the Plaintiff "not responsible" for possession of a knife. However, as will be explained in more detail below, the Student Conduct Office conducted a disciplinary process for the Plaintiff on September 21, 2004. Later that day, the Department of Campus Safety and Security published the Crime Alert. The uncontradicted deposition testimony of Ms. Bennett explains that the Department of Campus Safety and Security had no knowledge whatsoever of the disciplinary process or its findings. *Statement of Undisputed Facts*, para. 17. More importantly, the finding of "not responsible" of the Student Conduct Hearing Panel does not mean that JWU "knew" that the Plaintiff did not possess a knife during the incident. Rather, the panel found that based upon the evidence presented, the Plaintiff was not responsible for the university weapons related offense. In any event, the Plaintiff's argument is irrelevant because the statement published in the Crime Alert is true. Additionally, it is uncontested that Elyse Okolita reported to the Providence Police that the Plaintiff had a knife during the

incident. *See Statement of Undisputed Facts*, para. 5. It is also uncontested that the JWU Unusual Incident Report states that Ms. Okolita reported that the Plaintiff "flashed a knife" during the incident. *See Statement of Undisputed Facts*, para. 7. Consequently, the statement in the Crime Alert is true. A finding of "not responsible" during a student disciplinary hearing does not falsify the witness statement. The record is plain. JWU, through its Department of Campus Safety and Security, published a true statement in the Crime Alert. Accordingly, because the statements published in the Crime Alert are true, the Plaintiff cannot prevail on a defamation claim, and summary judgment should be entered against the Plaintiff and in favor of JWU as to Count I of the Amended Complaint.

In the alternative, even assuming *arguendo* that the statements published by JWU could conceivably be considered to be "false," the Plaintiff still cannot prevail as a matter of law because JWU had a qualified privilege to publish the Crime Alert. In order to overcome the qualified privilege, the Plaintiff must prove that JWU acted with actual malice. The Plaintiff fails to allege malice, let alone provide any record evidence to support any such claim.

This Court has recently explained that "a person may escape liability for a false and defamatory statement 'if the occasion for the publication is such that the publisher acting in good faith correctly or reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person, or certain interests of the public.'" *Bartlett*, 2006 WL 2709404 at *8 (D.R.I. Sept. 20, 2006)(quoting *Ponticelli v. Mine Safety Appliance Co.*, 104 R.I. 549, 247 A.2d 303, 305-06 (R.I. 1968)). As the *Ponticelli* Court made clear, "[u]nderlying the

principle is the public policy consideration that unless such an occasion is privileged, persons would not speak, even though the interests of the community at large required that they do so, lest they be exposed to a suit for defamation for what they say." *Ponticelli*, 247 A.2d at 306. "If there is information that affects a sufficiently important interest of the publisher and the recipient's knowledge of the defamatory matter will be of service in the lawful protection of that interest, the communication may be privileged." *Mills*, 837 A.2d at 720 (citing *Restatement (Second) of Torts* §594 at 263 (1977)). "The determination of whether privilege exists on the facts of a particular case is a question of law for the court to decide." *Id*.

JWU is required by federal law (the Clery Act) to publish crime alerts pursuant to the Regulations of the Offices of the Department of Education, the Office of Postsecondary Education. In particular, 34 C.F.R. § 668.46(e), provides, in pertinent part, that an

> "institution must, in a manner that is timely and will aid in the prevention of similar crimes, report to the campus community on crimes"

that are described in other sections of the Clery Act.[5]

In the instant matter, it was reported to the Police and to JWU that a student had been assaulted in an area surrounding the campus, that a knife had been shown during the incident, and that the student suffered a fractured skull and concussion. Based upon these

---

[5] To facilitate compliance with the Clery Act, 20 U.S.C. § 1092(f)(3), 34 C.F.R. § 668.46(e), JWU maintains a Department of Safety and Security, which, from time to time, promulgates orders, including General Order-033. General Order-033 addresses Crime Prevention Programs and Community Relations and sets forth procedures to educate and inform the University community in crime prevention awareness and methods. Among other things, General Order-033 states that the Department of Safety and Security will establish the position of Crime Prevention Officer, who will be "responsible for alerting the University community of crimes that have occurred in the local area, both on and off campus, by posting crime alerts in buildings throughout the University and notices in the Campus Herald newspaper." *Statement of Undisputed Facts*, para. 24.

reports, JWU had a legal, moral and social duty to speak out, and to publish the Crime Alert. JWU was legally required to "report to the campus community on crimes" pursuant to federal mandate. Even in the absence of the governing federal statute, it would have been appropriate for JWU to publish the Crime Alert for the purpose of ensuring the safety of its students as a crime involving a weapon and serious bodily injury was *reported* to have occurred near the campus, and it would have been appropriate for JWU to warn students of the circumstances and possible danger. Therefore, in order to ensure that JWU would not be in any way inhibited from speaking out to protect the safety of its students, the law provides JWU with a qualified privilege to make statements necessary to further these important interests.

To overcome such a privilege,

> "the plaintiff must prove that the person making the defamatory statements acted with ill will or malice . . . A privileged communication is, by definition, made in good faith . . . Therefore, the burden is on the plaintiff to prove the publisher made the statement with express malice. . . To support this burden the plaintiff must prove that the 'primary motivating force for the communication was the publisher's ill will or spite."

*Mills*, 837 A.2d at 720 (citations omitted).

In the instant matter, there is no evidence in the record to support a claim that JWU acted with ill will, malice, or spite. Moreover, there is no evidence in the record that the "primary motivating force" for JWU in publishing the Crime Alert was ill will, malice or spite. To the contrary, the record evidence demonstrates that JWU was endeavoring to fulfill its duties. JWU was required legally to publish the Crime Alert, and Ms. Bennett's uncontradicted deposition testimony illustrates the state of mind of JWU with respect to this legal obligation. *Statement of Undisputed Facts*, para. 25. Ms.

Bennett's uncontradicted testimony also illustrates the state of mind of JWU with respect to its good faith belief in its moral and social obligations. There is no evidence whatsoever to suggest that JWU acted with any improper notion, goal or imperative in mind, let alone ill will, malice or spite. The record evidence shows that JWU sought to fulfill its legal obligation under the federal mandate and its moral and social obligations to ensure the safety of its students. To those ends and for those purposes, JWU published the Crime Alert. Accordingly, based on the record evidence, summary judgment should enter against the Plaintiff as to Count I of the Amended Complaint because even if the statements published by JWU could somehow be considered "false," JWU has the protections of a qualified privilege and the Plaintiff has failed to provide evidence of malice sufficient to overcome the privilege.

**B. <u>The Punitive Damages Claim</u>**

The Plaintiff seeks to hold JWU liable for punitive damages flowing from the defamation claim. Count II of Plaintiff's Amended Complaint reads, in pertinent part, as follows:

> 7. At the time that the defendant university published the "Crime Alert" on September 21, 2004, university officials knew that the plaintiff did not possess a knife at the time of the incident involving another student. Notwithstanding this fact, the defendant knowing that portion of the "Crime Alert" in issue to be false, referenced the fact that the plaintiff possessed a knife at the time of said incident.

This claim fails as a matter of law because (a) the Plaintiff has failed to allege the malice requisite to succeed on such a claim; (b) he has failed to satisfy the malice requirement under the Supreme Court caselaw; (c) he has failed to satisfy the malice requirement

under the more stringent Rhode Island caselaw; and (d) the uncontradicted record evidence does not support a claim for punitive damages.

### 1. <u>Count II Does Not Allege the Requisite Elements to Support a Claim for Punitive Damages</u>

The initial sentence of paragraph 7 in Count II is incorrect and is contradicted by the record in this case. The deposition testimony of Ms. Bennett shows that the Department of Campus Safety and Security, which issued the Crime Alert, is separate and independent from the Student Conduct Office of JWU, which dealt with the Plaintiff's disciplinary proceedings. *Statement of Undisputed Facts*, para. 26. Ms. Bennett testified that the personnel of the Department of Campus Safety and Security would have had no knowledge of any decisions made by the Student Conduct Office with respect to the Plaintiff, and her testimony in this regard is uncontradicted. *Id. See also Statement of Undisputed Facts*, para. 17. Therefore, the Plaintiff's allegation that "at the time that the defendant university published the 'Crime Alert' … university officials knew that the plaintiff did not possess a knife at the time of the incident" unfairly suggests that JWU knowingly issued a false Crime Alert. Such an allegation is not supported by the same deposition upon which Plaintiff relies. Rather, as shown by the testimony of Ms. Bennett, the Crime Alert was issued by the Department of Campus Safety and Security without knowledge of what was transpiring or had transpired at the Plaintiff's disciplinary hearing. The two are unrelated and separate units, each carrying out its respective responsibilities.

There is another problem with Count II. The Plaintiff alleges that university officials "knew" that the Plaintiff did not possess a knife at the time of the incident. The Plaintiff is apparently referring to the decision of the JWU Student Conduct Hearing

Panel that the Plaintiff was found "not responsible" for the charge of possession of a knife. However, a hearing panel's decision finding the Plaintiff "not responsible" for an alleged violation does not mean that JWU (and in particular the Department of Campus Safety and Security, which issued the Crime Alert and which was not a party to the disciplinary proceedings) "knew" that the Plaintiff did not have a knife, particularly where the Department of Campus Safety and Security had received the JWU Unusual Incident Report supported by the Providence Police Witness Statement of Elyse Okolita which reported, respectively, that "a knife was flashed" and that Plaintiff "had a pocket knife in one of his hands." *See Statement of Undisputed Facts*, para. 4-8. Findings of responsibility in a JWU disciplinary hearing are based on the evidence available and presented to the panel at the time. Therefore, Plaintiff's allegation that JWU "knew" that the Plaintiff did not possess a knife is not only unsupported by the record, but incorrect based on the record. What the Department of Safety and Security "knew" for purposes of issuing the Crime Alert is what had been reported to the Providence Police and the Unusual Incident Report, *i.e.*, that a knife was seen during the incident.

There is another problem with the Plaintiff's punitive damages claim. The second sentence states "Notwithstanding this fact, the defendant knowing that portion of the 'Crime Alert' in issue to be false, referenced the fact that the plaintiff possessed a knife at the time of said incident." As shown above, the Department of Campus Safety and Security did not "know" at the time it issued the Crime Alert that the Plaintiff did not possess a knife. Rather, unknown to the Department of Campus Safety and Security, earlier on the same day and prior to issuance of the Crime Alert, the Student Conduct Hearing Panel found, based on the evidence before it, that the Plaintiff was "not

responsible" for the specific code violation dealing with possession of a weapon. The decision of the Student Conduct Hearing panel was not communicated to the Department of Campus Safety and Security before it issued the Crime Alert. Nor was there a reason to do so as JWU's obligation to publish the Crime Alert is independent of its decision to hold a disciplinary hearing or the results thereof. Moreover, such a finding of "not responsible," even if it had been known, would not have been binding on the Department of Campus Safety and Security for the purposes of issuing the Crime Alert. Instead, the Department of Campus Safety and Security issued the Crime Alert pursuant to federal mandate, 34 C.F.R. § 668.46(e), and based on what is contained in the JWU Unusual Incident Report, supported by the Witness Statement of Elyse Okolita. Second, as shown by the JWU Unusual Incident Report and the Witness Statement of Elyse Okolita, there were reports to JWU and to the police, respectively, that "a knife was flashed" and that the Plaintiff "had a pocket knife in one of his hands." Based upon this information, the Department of Campus Safety and Security issued the Crime Alert containing a statement that it was "stated a knife was shown during the incident." Consequently, the Crime Alert is an accurate report. Whether the Plaintiff ultimately was found responsible or not responsible in a disciplinary hearing or whether Plaintiff ultimately was charged or not charged by the Providence Police with weapons related or other offenses are irrelevant.

Not only does Count II contain allegations that are incorrect, it also fails to allege "actual malice," does not contain any knowingly false statement published by JWU (in fact, the statement as published in the Crime Alert was an accurate report), and does not support a claim for punitive damages. Finally, there is no record evidence to support an

actual malice standard. Accordingly, summary judgment should be entered against the Plaintiff and on behalf of JWU as to Count II of the Amended Complaint.

### 2. **Count II Fails to Satisfy the Punitive Damages Requisite Elements Under *Gertz v. Robert Welch, Inc.***

Plaintiff argued in his Motion to Amend Complaint that the statements contained in Count II form the basis of his claim for punitive damages pursuant to the Supreme Court's holding in *Gertz. Gertz* stands for the proposition that as a matter of constitutional law a private figure plaintiff can recover punitive damages upon proving "actual malice," which was defined in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) as knowledge of the falsity of the alleged libelous statement or publishing with reckless disregard of whether the statement is true or false.

Under *Gertz* (even assuming *arguendo* it applies here), Count II fails to satisfy the elements required for the imposition of punitive damages. In order for the Plaintiff to recover punitive damages under *Gertz*, he must allege and ultimately prove that the statements in the Crime Alert were false, and that JWU published the Crime Alert with "knowledge of the falsity of the allegedly libelous statement" or "with reckless disregard of whether the statement is true or false." Here, Plaintiff has failed to allege such facts in Count II of his Amended Complaint. As shown above, the statements contained in the Crime Alert accurately described what had been reported to JWU by witnesses and to the Providence Police by Elyse Okolita. This information was made available to the JWU Department of Campus Safety and Security. Under the *Gertz* constitutional standard, the Plaintiff has failed to allege facts sufficient to state a claim upon which punitive damages could be imposed under *Gertz*. Additionally, there are no record facts to support such a

claim. Accordingly, summary judgment should be entered against the Plaintiff and on behalf of JWU as to Count II of the Amended Complaint.

**3. <u>Count II Fails to Satisfy the Punitive Damages Requisite Elements Under Rhode Island Law</u>**

Plaintiff also ignores the more restrictive standards governing the imposition of punitive damages under Rhode Island law, including punitive damages in defamation cases. This Court has stated that in order to allege a claim for punitive damages under Rhode Island law, one must allege that the defendant acted with the intent to cause harm, *Wilson Auto Enterprises, Inc. v. Mobil Oil Corp.*, 778 F.Supp.101, 107 (D.R.I. 1991). An "award of punitive damages is considered an extraordinary sanction and is disfavored in the law, but it will be awarded with great caution and within narrow limits." *D'Amato v. Rhode Island Hospital Trust Nat'l Bank*, 772 F.Supp.1322, 1324 (D.R.I. 1991), *aff'd*, 958 F.2d 361 (1st Cir. 1992). The Court of Appeals for the First Circuit weighed in the following year, explaining that "[t]he standard in Rhode Island for imposing punitive damages is rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." *Davet v. Maccarone*, 973 F.2d 22, 27 (1st Cir. 1992).

Later, in 1993 the Rhode Island Supreme Court severely restricted the imposition of punitive damages. *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I. 1993).

> This court and others have held that the party seeking punitive damages has the burden of producing 'evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amount[s] to criminality, which for the good of society and warning to the individual, ought to be punished.'(citations omitted)

*Id.* The *Palmisano* court further stated that "for punitive damages to be awarded there must be a showing that the defendant acted with malice or in bad faith" and with such conduct "as amount[s] to criminality." *Id*. (citing *Morin v. Aetna Casualty and Surety Co*., 478 A.2d 964, 967 (R.I. 1984).

Two years later, the Rhode Island Supreme Court applied its holding in *Palmisano* to defamation actions, explaining that although punitive damages may at times be allowed in such actions,[6] *Palmisano* "severely restricted" the imposition of punitive damages. *Johnson v. Johnson*, 654 A.2d 1212, 1217 (R.I. 1995). In *Johnson*, the court concluded that the plaintiff failed to meet the "rigorous" standard for the imposition of punitive damages. *Id.*

Here, Count II of Plaintiff's Amended Complaint fails to satisfy the elements required under law for the imposition of punitive damages, including the stringent standard under Rhode Island law, which requires conduct amounting to "willfulness, wickedness or recklessness … that amount[s] to criminality." *Palmisano*, 624 A.2d at 318. Count II only alleges that JWU knowingly published a false statement. As shown above, the statements as published by JWU were accurate, *i.e.*, it had been reported to JWU and to the Providence Police that a knife was shown. Nevertheless, even assuming *arguendo* that the statements published by JWU could conceivably be considered "false," JWU's conduct in publishing a Crime Alert as required by federal law does not remotely approach the kind of egregious, criminal conduct required to impose punitive damages under *Palmisano* and *Johnson*. Moreover, even if JWU had published a false statement as alleged, which it plainly did not, such a publication under these circumstances would

---

[6] Rhode Island had previously recognized the possibility of punitive damages in defamation cases. *Bosler v. Sugarman*, 440 A.2d 129 (R.I. 1982).

not permit the imposition of punitive damages, as the Amended Complaint does not allege that JWU acted in a manner that was “willful, wicked, or reckless” which “amounts to criminality.” Nor is there any record evidence to support this standard. Accordingly, summary judgment should be entered against the Plaintiff and on behalf of JWU as to Count II of the Amended Complaint.

### 4. <u>The Uncontradicted Deposition Testimony of Barbara Bennett Does Not Support A Claim for Punitive Damages</u>

In support of his motion to amend complaint to add the punitive damages claim, Plaintiff relied on the deposition testimony of Barbara Bennett. Plaintiff argued that “Recent testimony from Barbara Bennett, Chief Legal Counsel for Johnson & Wales University, revealed that at approximately 4:00 p.m. on the aforesaid date, the university published a ‘Crime Alert’”, and that “Ms. Bennett testified that the publication of the ‘Crime Alert’ occurred shortly after the Hearing Board’s decision finding Mr. Havlik not guilty of possession of a knife.” Plaintiff’s Memorandum of Law in support of Motion to Amend at 1.

Plaintiff failed to mention, however, that during her deposition, Ms. Bennett testified that neither she, nor the Department of Campus Safety and Security, knew that the Student Conduct Hearing Panel had made a determination with respect to the Plaintiff when the Crime Alert was issued. Rather, the time sequence was such that fortuitously the Student Conduct Hearing Panel made a decision on the same day prior to the time that the Department of Campus Safety and Security issued the Crime Alert. However, as shown by the uncontradicted deposition testimony of Ms. Bennett, the decision by the Student Conduct Hearing Panel was not communicated to or known by the Department of Campus Safety and Security prior to the time it published the Crime Alert. Nor was the

Department of Campus Safety and Security supposed to know whether there had been a student disciplinary hearing and the results of such a hearing as a pre-condition to the issuance of the Crime Alert. In fact, the results or findings of a Student Disciplinary Hearing did not impact, nor are they meant to impact whether a Crime Alert is issued and what is stated therein. Nor does JWU control or have a say in what ultimately happens with the criminal charges that may be brought by prosecuting authorities. Ms. Bennett's deposition testimony in no way supports a claim for punitive damages against JWU. To the contrary, her testimony further shows that the Plaintiff's claim for punitive damages is unsupported in fact or law. Accordingly, summary judgment should be entered against the Plaintiff and on behalf of JWU as to Count II of the Amended Complaint.

### C. The Breach of Contract Count

The Plaintiff also seeks to hold JWU liable for breach of contract arising out of internal discipline charges filed by JWU against the Plaintiff for violation of the Student Code of Conduct and the ultimate decision of JWU to dismiss the Plaintiff from the University. The Plaintiff cannot prevail as a matter of law on the breach of contract claim because the uncontradicted record evidence reveals that the disciplinary process that JWU provided to the Plaintiff afforded him with the process to which he was entitled under existing law.

"The student-college relationship is essentially contractual." *Mangla v. Brown University*, 135 F.3d 80, 83 (1st Cir. 1998)(citing *Russell v. Salve Regina College*, 938 F.2d 315, 316 (1st Cir. 1991). The First Circuit has noted that the "terms of a contract may include statements provided in student manuals and registration materials." *Id*. In interpreting the contractual terms, the proper standard is that of "'reasonable expectation

– what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.'" *Id.* (quoting *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1977), *cert. denied*, 435 U.S. 971 (1978)). This contractual relationship between a university and its students has been described as "strong, albeit flexible." *Dinu v. President and Fellows of Harvard College*, 56 F.Supp.2d 129, 130 (D.Mass. 1999). Although"[n]umerous jurisdictions have held that a student and private university relationship is essentially contractual in nature," these jurisdictions have also recognized that "the relationship has unique qualities, and thus does not require strict adherence to contract law." *Gorman v. St. Raphael Academy*, 853 A.2d 28, 34 (R.I. 2004). The *Gorman* court explained that "[b]ecause contracts for private education have unique qualities, we must construe them in a manner that leaves school administration broad discretion to meet its educational and doctrinal responsibilities." *Id.*

Turning specifically to the issue of the responsibility of a private university to determine appropriate sanctions for violations of student codes of conduct, "[g]reat deference is extended to university decision-making on academic and disciplinary matters." *Morris v. Brandeis Univ.*, 804 N.E.2d 961, 961 (Mass. App. Ct. 2004). *See also Pacella v. Tufts Univ. School of Dental Medicine*, 66 F.Supp.2d 234, 241-242 (D.Mass. 1999)(". . . this court is mindful of the appropriate deference afforded universities in the 'unique context of academic curricular decision-making . . .'")(quoting *Guckenberger v. Boston Univ.*, 8 F.Supp.2d 82, 89 (D.Mass. 1998)). Additionally, a "university is not required to adhere to the standards of due process guaranteed to criminal defendants or to abide by rules of evidence adopted by courts. 'A college must have broad discretion in determining appropriate sanctions for violations of its policies.'"

*Schaer v. Brandeis University*, 735 N.E.2d 373, 381 (Mass. 2000)(quoting *Coveney v. President & Trustees of the College of Holy Cross*, 445 N.E.2d 136, 139 (Mass. 1983)). The *Schaer* court made plain that "[w]e adhere to the principle that '[c]ourts are charry about interfering with academic and disciplinary decisions made by private colleges and universities.'" *Id*. The First Circuit has cautioned that "[t]here can be no doubt that courts should be slow to intrude into the sensitive area of the student-college relationship, especially in matters of curriculum and discipline." *Russell v. Salve Regina College,* 890 F.2d 484, 489 (1st Cir. 1989). As the United States District Court for the Southern District of New York has made plain,

> "whatever the legal theory underlying plaintiff's claim may be, the crucial issue is whether defendant conducted the disciplinary proceedings against plaintiff substantially in accordance with its established procedures."

*Fraad-Wolff v. Vassar College*, 932 F.Supp. 88, 91 (S.D.N.Y. 1996). Moreover, "if school officials act in good faith and on reasonable grounds . . . their decision to suspend or expel a student will not be subject to successful challenge in the courts. . . Violations of reasonable rules and regulations of a school are a recognized ground for dismissal of a student." *Cloud v. Trustees of Boston University*, 720 F.2d 721, 724 (1st Cir. 1983)(quoting *Coveney*, 445 N.E.2d at 139).

In the instant matter, the record shows that JWU provided the Plaintiff with a Student Handbook, which includes a Student Code of Conduct and Conduct Review Process. *Statement of Undisputed Facts*, para. 27-28. This Conduct Review Process sets forth the rights of each student who is confronted with an allegation of a violation of the Student Code of Conduct. Although JWU does not concede that all of the rights and procedures that JWU elects to afford its students are even required under existing case

law, for the purposes of discussing the Plaintiff's breach of contract claim, it is clear that JWU adhered to the provisions of the Conduct Review Process described in the Student Handbook.

The uncontested evidence in the record, most particularly the Plaintiff's deposition testimony, shows that JWU in fact provided the Plaintiff with all of the due process to which he was entitled. *Statement of Undisputed Facts*, para. 10-14. The record shows that upon receiving the report of the alleged assault, JWU acted promptly and in conformity with the Conduct Review Process by hand-delivering a Notice of Suspension to the Plaintiff on September 20, 2004 and providing him with a hearing the next morning, so that he would not miss any more classes than necessary during the process. *Statement of Undisputed Facts*, para. 10. The record further shows that on September 21, 2004, the Plaintiff was provided with a hearing before a hearing officer and two-person panel from the Student Conduct Office who are designated by JWU to hear such cases. *Statement of Undisputed Facts*, para. 11-12. The Plaintiff himself made clear that he had a full opportunity to be heard, that he was allowed to call witnesses, and in fact, witnesses testified on his behalf. *Statement of Undisputed Facts*, para. 13-14. The uncontested evidence in the record is that after hearing and considering all of the evidence presented, including the evidence presented by the Plaintiff, the panel found that the Plaintiff had violated certain provisions of the Student Conduct Code. The Plaintiff testified that JWU provided him with a Student Conduct Hearing Decision, which informed him of his right to an appeal. *Statement of Undisputed Facts*, para. 21. The Plaintiff invoked his right to appeal this decision, and JWU ultimately upheld the decision. *Statement of Undisputed Facts*, para. 22-23.

JWU provided the Plaintiff with what the Student Handbook describes and perhaps most importantly, with notice and fair opportunity to be heard.[7] The procedures that were employed and followed by JWU are arguably more than what existing case law would require. They are subject to the deference afforded to private universities in the unique area of academic decision-making. Accordingly, summary judgment should enter against the Plaintiff and on behalf of JWU as to Count III of the Amended Complaint.

## CONCLUSION

For all of the foregoing reasons, JWU requests that this Court enter summary judgment against the Plaintiff and on behalf of JWU as to all counts of Plaintiff's Amended Complaint.

Dated: November 29, 2006

DEFENDANT,
JOHNSON & WALES UNIVERSITY
By its attorneys,

/s/ John A. Tarantino

JOHN A. TARANTINO, #2586
jtarantino@apslaw.com
PAUL V. CURCIO, #1965
pcurcio@apslaw.com
KATY A. HYNES, #6659
khynes@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

[7] The Plaintiff alleges in paragraph 14 of Count III of the Amended Complaint that JWU "prejudged" the Plaintiff before his hearing. JWU has explained in detail earlier in this memorandum that the Department of Campus Safety and Security, which published the Crime Alert, is separate from the Office of Student Conduct, which conducted the disciplinary proceeding, and there is no evidence that the Department of Campus Security and Safety played any role in the disciplinary hearing.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of November, 2006, I did send a true copy of the within Johnson & Wales University's Motion for Summary Judgment and supporting Memorandum of Law **by electronic means (ECF)** to the following attorney of record: John R. Mahoney, Esq., Asquith & Mahoney, LLP, 155 South Main Street, Suite 202, Providence, RI 02903.

/s/ John A. Tarantino__________

*400414_1.doc*