# EXHIBIT 7

Havlick represented a threat to students and employees?

A Yes.

Q Why is that?

A For two reasons; one is what we have already discussed which was the prior incidents of students who had pledged fraternities and then withdrawn their pledges being attacked or threatened; and the second reason was that the witnesses in this case expressed a fear of retaliation to our Safety and Security Department.

Q As to the second aspect of your consideration, was that fear expressed in writing?

A By the students, I don't know; but it was, when they reported it to Safety and Security, it was memorialized in writing in our Incident Report which is your Plaintiff's marked Number 2.

Q So you did review, and I think you had mentioned this earlier, you did review Plaintiff's 2 which is the Incident Report before Plaintiff's 5, the Criminal Alert was published?

A The Crime Alert.

Q Crime Alert?

A Yes, yes, I did review it.

Q Now, if you know, why are Crime Alerts published by Johnson & Wales?

A Because we are required to publish them by the laws and regulations that are referred to on Plaintiff's 12.
Q Is it your understanding in looking at Plaintiff's 12 that 20 USC, Section 1092 is a Federal Statute?
A Yes.
Q And that 34 CFR 668.46 is a Department of Education Regulation issued pursuant to that statute?
A Yes.
Q So that as to specifics with regard to a Crime Alert you would as chief counsel be looking more at the CFR than you would be at the 20 USC Section 1092 I take it?
A I've looked at both. They're pretty similar. I have the CFR handy and when a question arises regarding a Timely Alert I look back at it just to make sure I recall what it says.
Q So is it fair to say that to your knowledge Johnson & Wales University publishes Crime Alerts because it is required to through Federal Law?
A Yes.
Q So because it's required to publish Crime Alerts through Federal Law, do you as a former associate counsel and now chief counsel review the statute and the federal regulation pursuant thereto to refresh yourself as to what is required with regard to the publication of the

assault had taken place on Friday, September 17, 2004 at approximately 12 a.m; is that correct?
A That's correct.
Q And that in fact the perpetrator of that assault or said another way the assailant was Christopher Havlick?
A That's not correct.
Q Doesn't it say on this document the assailant was identified as Christopher Havlick?
A Yes.
Q So as you read that document, and you tell me how you interpret it, do you interpret Plaintiff's 5 to indicate that the person who committed the crime of assault was Christopher Havlick?
A I read it just as it says, that the person who committed the crime of assault was identified as Christopher Havlick.
Q Well, what is the difference in your view?
A The University was not at the scene of the incident, no University official was there so we would not state that it was Christopher Havlick. We are preparing a Crime Alert based on what is reported to us.
Q I know, but you, I said it again, you, the University, the University through its Security Department published Plaintiff's 5; agree or disagree with that statement?

under the circumstances of this question you might have talked to?

A I might have spoken to someone in security to see if we had any other further information regarding the report, to see if there was a police report. To the best of my knowledge there was a police report which they forwarded to me. It is not the same police report as the one that you have identified as Number 1.

Q So in terms of Plaintiff's 5, it was your intent in specifying Havlik's name that the campus community know what about Havlick?

A That he posed a risk of assaulting other people.

Q That's because you assumed in this particular instance that in fact he was guilty of assaulting Ratcliffe; is that correct?

A No, it's because he was reported to have assaulted Ratcliffe.

Q If the report was, as it turns out, inaccurate and in fact he didn't assault Havlick, what fear or threat would Havlick's presence on the community have to fellow students and other community members?

MR. TARANTINO: Object to the form.

A Under the regulations, I assessed the threat based on the report.

the person having the knife.

MR. MAHONEY: Let me go to that for a minute, if I may.

Q Now taking a look at Plaintiff's 5, I see the Crime Alert reads that "the victims stated that a knife was shown during the incident"; is that correct?

A That's correct.

Q The Crime Alert as we've mentioned two or three times also identifies Christopher Havlick as the assailant; is that correct?

A That is correct.

Q Before the Crime Alert was published you had knowledge or did you have knowledge that Havlick was being charged with violations of three Student Code sections?

A To the best of my recollection I did.

Q You knew that one of those code sections related to having a knife?

A I did.

Q You knew that before the Crime Alert was published that the Student Disciplinary Board acquitted him of the knife?

A I did not.

Q I thought you said you did. I'm sorry. Before the Crime Alert was published, meaning Plaintiff's 5, you did not

have knowledge of the Student Board decision?
A No.
Q You did not?
A No.
Q Did you inquire as to whether the Student Board had made a determination as to what infractions if any Havlick was guilty of?
A No.
Q Why is that?
A It's not our practice to do that. Our obligation is to make a timely report. I don't usually check and Sandy doesn't check to see if there has been anything further in the proceedings.
Q Maybe, because I can confuse myself, didn't you tell me three or four minutes ago that you were aware, not necessarily of the results, but that the Student Disciplinary Board had made a decision before the Crime Alert was published or did I misunderstand?
A I was not aware before the Crime Alert was published that the Student Disciplinary Board had made a decision. I became aware of the Student Disciplinary Board's decision sometime much later. However, my records show that in fact the hearing took place before the Crime Alert was published.

Q When you say your records show -- and I think that's where I jumped to conclusions, that the hearing decision was made before the Crime Alert -- what records are you talking about?

A There is, and you have a copy of an e-mail from Sandy Lawrence that asks Safety and Security to go ahead and post the Crime Alert, that is sometime a little after 4:00 in the afternoon on September 21st. So that's when the Crime Alert would have been posted. I subsequently learned that the hearing had been scheduled for earlier in that day.

MR. TARANTINO: I think the confusion is you used the term "my records".

MS. BENNETT: My records, the University's records, I'm sorry.

Q Oh, I see. So what you have done since all of this, what you have done at some point is pieced together the fact that the Crime Alert would have been published on or shortly after 4 p.m. on September 21st; whereas, other records that you've had access to since the publication of the Crime Alert would suggest that the decision by the Board was made prior thereto?

A Exactly.

Q But that's your own personal knowledge, the fact is that

knife was involved?
A Right, the report indicated a knife, and it indicated a serious injury, both of those played a role in my determination that it was a crime that needed to be, for which we needed to think about the Crime Alert.
Q You since found out, and I realize it was months later, that Havlick was acquited of assault charges on a criminal level; is that true? Is it true you found that out is all I'm asking you?
A I found out that he was convicted by a judge and later acquitted by a jury.
Q But you're an attorney, this is why I'm asking you the question, as an attorney are you or you not aware of the fact that a District Court conviction of a misdemeanor can be appealed?
A Yes.
Q As an attorney, are you or are you not aware of the fact that the trial that will take place upon appeal will be in the Superior Court?
A Yes.
Q Are you or are you not aware of the fact that the trial on appeal in the Superior Court is a trial De Novo?
A No, I'm not aware because it's not an area of law I practice in.