UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER HAVLIK

VS. C.A. NO.: 05-510-ML

JOHNSON & WALES UNIVERSITY

**PLAINTIFF, CHRISTOPHER HAVLIKs, STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO DEFENDANT, JOHNSON & WALES UNIVERSITY's, MOTION FOR SUMMARY JUDGMENT**

Now comes the plaintiff, Christopher Havlik, and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of the local civil rules, submits the following statement of undisputed facts in support of its opposition to defendant's motion for summary judgment.

1. On the day of the incident, Corey Place was with the plaintiff, Christopher Havlik, on Pine Street. Donald Ratcliffe was yelling at Christopher Havlik. Mr. Ratcliffe was accusing Mr. Havlik of having vandalized his car. (Place Depo – p. 12, p. 13)

2. Later, Mr. Ratcliffe approached Mr. Havlik. He was yelling at Mr. Havlik about the fact that Mr. Havlik had vandalized his car. He was only two (2) feet from Mr. Havlik. (Place Depo – p. 15)

3. Mr. Havlik is about 5'8", 5'9" tall. Mr. Ratcliffe was really angry at the time. (Place Depo – p. 15, 16)

4. Mr. Ratcliffe was very angry and aggressive toward Mr. Havlik. Mr. Ratcliffe's arms were flailing. He was leaning toward Mr. Havlik. Both of Mr. Ratcliffe's arms were moving as he was real close to Mr. Havlik. Mr. Havlik swung and punched Mr. Ratcliffe on the jaw.

5. Mr. Ratcliffe was a member of the Johnson & Wales Hockey Team at the time. (Ratcliffe – p. 2)[1]

6. Mr. Ratcliffe was nineteen (19) years old at the time of the incident. He was born on April 17, 1985. (Defendant's Exhibit 3)

7. On the morning of the day the incident occurred, Mr. Ratcliffe was a little upset because his car had been damaged. There was about $3,000.00 worth of damage to the vehicle. (Ratcliffe – p. 3)

8. Mr. Ratcliffe is 6'4" tall and weighed 205 lbs. – 210 lbs. at the time of the incident. (Ratcliffe – p. 6)

9. Mr. Ratcliffe acknowledges that the Rhode Island Hospital record with regard to his blood alcohol reads .242. (Ratcliffe – p. 29)

10. The Rhode Island Hospital record reflecting the .242 reading is attached.

11. Christopher Havlik does not drink alcohol. (Phillips – p. 61)[2]

12. Under age drinking was a violation of Student Conduct Rules at Johnson & Wales University as of September, 2004. As far as Dean Martel knew, nothing was done by the University to look into whether Mr. Ratcliffe was drinking at the time of the incident. (Martel Depo – p. 32)

13. Christopher Havlik was a member of the ZBT fraternity. (Havlik Depo – p. 8)

14. Johnson & Wales University Dean of Students, Ronald L. Martel, met with Chris Havlik and his mother after Chris' hearing but before his appeal from the decision of the Hearing Board. At the meeting, Dean Martel accused Chris Havlik of lying and referred to members of his fraternity as "thugs". (Martel Depo – p. 27)

[1] Ratcliffe page numbers refer to his May 5, 2005 trial testimony in the criminal trial of Mr. Havlik.
[2] Phillips page numbers refer to Joel Phillips' testimony in the criminal trial of Mr. Havlik.

15. Although Dean Martel was unaware of any problems that Chris Havlik had been involved in, his fraternity had previously been involved in incidents of rowdiness and some threatening behavior relative to pledges. (Martel Depo – p. 28)

16. The "Crime Alert" was published prior to any appeal by Mr. Havlik from his finding of responsibility for violating two sections of the J&W Code of Conduct. (Martel Depo – p. 35)

17. Ms. Veera Sarawgi was the individual who heard Mr. Havlik's appeal. She was the Vice President of the Providence campus. (Martel Depo – p. 41, 42, 43)

18. Ms. Sarawgi upheld the finding of responsibility on September 29, 2004. (Martel Depo – p 44)

19. Dean Martel spoke to Ms. Sarawgi before her decision was made. She wanted to know the specifics of the case; what transpired and was there any reason why this individual should not be dismissed from the university and Dean Martel indicated "no". (Martel Depo – p. 47, 48)

20. Dean Martel has seen about five (5) other "Crime Alerts" involving students allegedly accused of a crime, none of which, have mentioned the student's name. (Martel Depo – p. 49, 50)

21. Some students have been expelled but the "Crime Alerts" that were published relating to them did not reveal their identity. (Martel Depo – p. 59, 60)

22. Ms. Barbara Bennett has been the General Counsel at Johnson & Wales since 2000. She is an attorney. (Bennett Depo – p. 4)

23. Ms. Bennett received a draft "Crime Alert" regarding the incident in issue. She reviewed it. (Bennett Depo – p. 26)

24. At Attorney Bennett's direction, there were two changes made to the draft "Crime Alert". The first is that reference was made in the published "Crime Alert" that ZBT fraternity members were involved and the other change was to identify Mr. Havlik by name. (Bennett Depo – p. 28, 29, 30)

25. A prior incident occurred involving ZBT members in April, 2004. ZBT members threatened a student who had pledged the fraternity and then had withdrawn his name. That incident did not involve Christopher Havlik. (Bennett Depo – p. 31, 32)

26. Attorney Bennett maintains that the college had to publish the "Crime Alerts" because of Federal Statute 20 USC § 1092 and through Federal Department of Education Regulation, 34 C.F.R. § 668.46. She looked at both the Federal statute and the Department of Education Regulation. (Bennett Depo – p. 39)

27. In deciding to issue a "Crime Alert" she considered three factors: 1.) was the crime that was reported a crime that is covered by 34 C.F.R. § 668.46; 2.) has it been reported to campus security or local police and 3.) is the student perceived to be a threat to other students or employees. (Bennett Depo – p. 40)

28. Attorney Bennett was only concerned that the incident occurred in the vicinity of the campus and that it was an area that their students would frequent. (Bennett Depo – p. 44)

29. The original hearing board made a decision that Mr. Havlik was not responsible for having a knife during the incident before the "Crime Alert" was published. (Bennett Depo – p. 83)

30. Attorney Bennett acknowledged that there would be a conflict if the "Crime Alert" was posted before the original panel's decision. (Bennett Depo – p. 91)

31. The appeal decision was not made until eight (8) days after the "Crime Alert" was published. (Bennett Depo – p. 92)

32. The appellate officer did have authority to reduce the sentence imposed upon Mr. Havlik. (Bennett Depo – p. 95, 96)

33. 20 copies of the "Crime Alert" were posted at various locations, including all three (3) floors of the Arcade. (Schneider – p. 58, 59)[3]

34. A criminal assault charge was filed against the plaintiff by the State of Rhode Island. The case was tried before a jury in Providence County Superior Court. In May, 2005 the jury returned a verdict on behalf of Mr. Havlik. (Attorney John S. Coughlin Affidavit)

CHRISTOPHER HAVLIK,
BY HIS ATTORNEY,

/s/ JOHN R. MAHONEY, ESQ.

JOHN R. MAHONEY, ESQ. - #1940
ASQUITH & MAHONEY, LLP
155 SOUTH MAIN STREET, 2nd FLOOR
PROVIDENCE, RI 02903
(401) 331-5353 – Telephone
(401) 331-7373 – Fax

[3] Refers to Deposition Transcript of Irving Schneider, Ph.D.

CERTIFICATION

I hereby certify that on the 9th day of December, 2006 I electronically filed the within to Paul V. Curcio, Esq., Adler, Pollock & Sheehan, PC., One Citizens Plaza, 8th Floor, Providence, RI 09203 – 1345.

/s/ JOHN R. MAHONEY, ESQ.
JOHN R. MAHONEY, ESQ. - #1940
ASQUITH & MAHONEY, LLP
155 SOUTH MAIN STREET, 2nd FLOOR
PROVIDENCE, RI 02903
(401) 331-5353 – Telephone
(401) 331-7373 – Fax