UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHRISTOPHER HAVLIK | : | |
| | : | |
| Vs. | : | C.A. No. 05-510ML |
| | : | |
| JOHNSON & WALES UNIVERSITY | : | |

**DEFENDANT JOHNSON & WALES UNIVERSITY'S**
**REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

On November 29, 2006, JWU filed a Motion for Summary Judgment and supporting Memorandum of Law, together with a Statement of Undisputed Facts in this matter. On December 9, 2006, the Plaintiff filed a memorandum of law in opposition, together with a Statement of Undisputed Facts. Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, Defendant, Johnson & Wales University ("JWU"), now submits this Reply Memorandum in further support of its Motion for Summary Judgment.

## I. Undisputed Facts

The Plaintiff has not disputed, expressly denied, or otherwise controverted the facts alleged in JWU's Statement of Undisputed Facts. Accordingly, pursuant to Local Rule 56, the following facts are now deemed admitted:

In the early morning hours of Friday, September 17, 2004, at approximately midnight, the Providence Police Department responded to an incident on Richmond Street in Providence. During the course of a verbal altercation, the Plaintiff struck Donald Ratcliffe, causing him to fall to the ground. The police requested a rescue to provide assistance to Mr. Ratcliffe, who suffered serious head injuries. The police

investigated the incident and took witness statements from, among others, Elyse M. Okolita. Ms. Okolita reported to the police that the Plaintiff had a knife in his hand during the incident. The police charged the Plaintiff with assault.

Because both Mr. Ratcliffe and the Plaintiff were students at JWU, the incident was reported to the Department of Campus Safety and Security at JWU. Officer Rebecca Steele, a member of the Department of Campus Safety and Security conducted an internal investigation, interviewed witnesses and generated an Unusual Incident Report. On Monday, September 20, 2004, the JWU Student Conduct Office issued a Notice of Suspension (temporary) to the Plaintiff, alleging violations of student conduct regulations; specifically, assault of another student, possession of a knife, and conduct that would violate federal, state or local laws. This notice was hand-delivered to the Plaintiff at approximately 2:00 p.m., and informed the Plaintiff of his right to a hearing to be held the following morning.

On Tuesday, September 21, 2004, the Plaintiff's hearing took place. A Student Conduct Hearing Officer and two panel members conducted the hearing. The Plaintiff exercised his right to explain what happened to the members of the panel. The Plaintiff also exercised his right to call witnesses to testify on his behalf.

Later that same day, the Department of Campus Safety and Security posted a "Crime Alert." Consistent with the Clery Act, the "Crime Alert" was issued based upon the JWU Unusual Incident Report and was consistent with the Providence Police witness statements. It was not based on what happened at the disciplinary hearing. At the time that the Department of Campus Safety and Security issued the "Crime Alert," it had no

knowledge of what had transpired at the Plaintiff's disciplinary hearing with the Office of Student Conduct.

It was not until the following day, September 22, 2004, that the decision of the panel was communicated to anyone as it was then that the Plaintiff received a decision from the Student Conduct Office, indicating that after hearing from the Plaintiff, as well as from the witnesses, the panel found the Plaintiff responsible for assault of another student and conduct that would violate federal, state or local laws. The panel found the Plaintiff not responsible for possession of a knife. The sanction imposed was dismissal from JWU. The Student Conduct Hearing Decision informed the Plaintiff of his right to an appeal. On September 27, 2004, the Student Affairs Office received a letter from the Plaintiff, indicating his desire to exercise his right to an appeal. On September 29, 2004, after conducting a review of the record and the procedure, Veera Sarawgi, the JWU Student Conduct Office Appeal Officer, issued an Appeal Review Notice, affirming the decision of the Conduct Review Hearing.

## II. Plaintiff's Purported Statement Of Undisputed Facts

Although Local Rule 56 does not require JWU to respond to Plaintiff's Statement of Undisputed Facts In Opposition to Defendant's Motion for Summary Judgment, it is important to point out the following.

1. The purported "undisputed facts" alleged in paragraphs 1 through 19, 22 through 27, 29, and 31 through 34 of the Plaintiff's Statement of Undisputed Facts are immaterial and irrelevant to the pending motion filed by the Defendant JWU, do not deny or otherwise controvert the Defendant's Statement of Undisputed Facts and therefore do not create an issue of fact precluding summary judgment.

2. The purported "undisputed facts" alleged in paragraphs 20 and 21 of the Statement of Undisputed Facts are incorrect characterizations of the record evidence. Barbara Bennett, Chief Legal Counsel for JWU, explained during her deposition that there was another instance in which a Crime Alert published the name of a student. *See* Portions of Barbara Bennett Deposition, p. 14, l. 16-24 through p. 15, l. 2, attached as **Exhibit 1**. *See also* Crime Alert, Aggravated Assault referring to Stephen Alegria attached as **Exhibit 2**. In addition, Attorney Bennett explained that other previous Crime Alerts involving students who had allegedly committed a crime did not reveal the student's name because JWU did not know at the time of the publication of the Crime Alert that a student had been involved. Rather, it was not until sometime after the publication of the Crime Alert that JWU learned that a student had been involved. **Exhibit 1**, p. 19, l. 3 through p. 21, l. 13.

3. The purported "undisputed facts" alleged in paragraph 28 of the Plaintiff's Statement of Undisputed Facts are incorrect characterizations of the record evidence. The Plaintiff cites page 44 of Attorney Bennett's deposition transcript in support of his alleged "undisputed facts." However, nowhere on page 44 or elsewhere in the transcript is there evidence that Attorney Bennett was "only" concerned that the incident occurred in the vicinity of the campus and that it was an area that JWU students would frequent. In fact, during the course of her deposition, Attorney Bennett expressed a variety of concerns with respect to the incident. *See, for example*, Portions of Barbara Bennett transcript, p. 44, l. 3-24 through p. 49, l. 7, p. 60, l. 6-14, attached as **Exhibit 1**.

4. The purported "undisputed facts" alleged in paragraph 30 of the Statement of Undisputed Facts are incorrect characterizations of the record evidence. The Plaintiff

alleges that "Attorney Bennett acknowledged that there would be a conflict if the 'Crime Alert' was posted before the original panel's decision." The Plaintiff cites page 91 of Attorney Bennett's transcript in support of this purported "undisputed fact." The following is what Attorney Bennett actually testified, as reflected on **Exhibit 1** p. 91, l. 13 through p. 92, l. 1-7 of the transcript of her deposition: "No, the only conflict I can think of that might arise is if the panel, who are our finders of fact, were somehow influenced by a Crime Alert before they sat down to hear the case. In which case if they had some predisposition they would hopefully acknowledge that and ask to have another person – if they had a conflict or predisposition, they would acknowledge it, and another person would step in as the member of the panel. In this particular case since the panel met prior to the publication of the Crime Alert I couldn't – you know looking in hindsight I certainly don't see any conflict."

**III. <u>Plaintiff's Argument that the Crime Alert Was Inaccurate is Without Merit</u>**

The Plaintiff contends that somehow the caption "Crime Alert Assault" renders false the otherwise true statement: "The assailant was *identified* as Christopher Havlik" (emphasis added). This means that JWU received a report that Plaintiff was the assailant. The Plaintiff also contends that (1) the "Crime Alert" inaccurately suggests a motive why the Plaintiff may have assaulted Mr. Ratcliffe; (2) the "Crime Alert" falsely references that a knife was *used* during the incident; and (3) the "Crime Alert" falsely references "victims," whereas Mr. Ratcliffe was the only victim of the assault. None of these arguments have merit.

First, the caption "Crime Alert Assault" does not make false the otherwise true statement "The assailant was identified as Christopher Havlik." As explained in detail in

JWU's Memorandum of Law in Support of its Motion for Summary Judgment, the record is replete with uncontested evidence that the assailant was *identified* as Christopher Havlik. Plaintiff does not contest this fact.[1]

Second, the publication does not support an argument of an improper motive on JWU's part. The "Crime Alert" states that "ZBT members were angry that the two students had chosen not to join the fraternity." The Plaintiff claims that this statement is without basis and thereby false. However, this statement was based on the content of the JWU Unusual Incident Report, which states that witnesses reported that ZBT fraternity members were angry because the two students had chosen not to join the ZBT fraternity. *See* **Exhibit 3**. This was not, as suggested by the Plaintiff, something that was made up or contrived by JWU.

Third, the Plaintiff argues that the "Crime Alert" is false because it suggests that a knife was *used* during the assault. That is not what the "Crime Alert" states. It accurately states it was reported that "a knife was shown." The fact that the panel members found the Plaintiff not responsible for possession of a weapon (knife) charge does not make the "Crime Alert" statement false. As explained in detail in JWU's Memorandum of Law in Support of its Motion for Summary Judgment, the statement contained in the "Crime Alert" with regard to the *report* of a knife being shown is true. What the panel ultimately found as a result of a disciplinary proceeding on specific evidence and charges before the panel is irrelevant to and does not change what had been *reported* to JWU.

---

[1] In fact, the Plaintiff directs this Court's attention to the definition of "assailant" contained in Webster's dictionary. This definition does not in any way change the fact that the *assailant* was *identified* by witnesses as Christopher Havlik, the Plaintiff. That is what JWU reported in the "Crime Alert."

Finally, the Plaintiff argues that the "Crime Alert" is false because it references "victims" and the Plaintiff argues that the only victim of the assault was Donald Ratcliffe. However, Ms. Okalita stated in her Providence Police Witness Statement that "Chris [the Plaintiff] just threw a punch past me and knocked Donny out." That statement can be reasonably construed, among other things, as an assault as to Ms. Okalita. The fact that the Plaintiff did not strike Ms. Okalita is not dispositive. Witness Statement of Elyse Okalita, **Exhibit 4**. The "Crime Alert" was based on a JWU Unusual Incident Report, which was supported by Ms. Okalita's witness statement. Additionally, another student, John Curley, who was with Ms. Okalita and Mr. Ratcliffe reported that he had been swung at by Plaintiff with the Plaintiff "missing [him] by inches." **Exhibit 3.** Based on Ms. Okalita's statement that the Plaintiff threw a punch past her, and Mr. Curley's allegation that Plaintiff had swung at him, it was not unreasonable for the drafters of the "Crime Alert" to have concluded that there was more than one victim of an "assault."

## IV. Plaintiff's Argument that JWU Did Not Have a Qualified Privilege Is Without Merit

The statements contained in the "Crime Alert" are true. However, even assuming *arguendo* that the statements could conceivably be considered false, JWU has a qualified privilege. As explained in JWU's Memorandum of Law in Support of its Motion for Summary Judgment, "a person may escape liability for a false and defamatory statement 'if the occasion for the publication is such that the publisher acting in good faith correctly or reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person, or certain interests of the public.'" *Bartlett*, 2006 WL 2709404 at *8 (D.R.I. Sept. 20,

2006)(quoting *Ponticelli v. Mine Safety Appliance Co.*, 104 R.I. 549, 247 A.2d 303, 305-06 (R.I. 1968)).

The Plaintiff does not disagree with the law, but contends that JWU did not have a qualified privilege because there was no legal duty under the Clery Act to publish the "Crime Alert" for two reasons: (1) the assault in the instant matter did not fit within the definition of "aggravated assault" contained in the governing regulations; and (2) the location of the assault did not fit the locations designated in the governing regulations. The Plaintiff is wrong on both counts.

First, JWU is required by the Clery Act to publish crime alerts pursuant to the Regulations of the Offices of the Department of Education, the Office of Postsecondary Education. In particular, 34 C.F.R. § 668.46(e), provides, in pertinent part, that an

> "institution must, in a manner that is timely and will aid in the prevention of similar crimes, report to the campus community on crimes"

that are described in other sections of the Clery Act. In connection with the Clery Act, the U.S. Department of Education, Office of Postsecondary Education publishes "The Handbook for Campus Crime Reporting" to guide universities in their compliance endeavors. *See* Excerpts from The Handbook for Campus Crime Reporting ("The Handbook"). attached as **Exhibit 5**. Chapter 5, page 61 of The Handbook explains that "In order to keep the campus community informed about safety and security issues on an ongoing basis, an institution *must alert* the campus community of certain crimes in a manner that is timely and will aid in the prevention of similar crimes. *These crimes must include all Clery Act crimes*" (emphasis added). The Handbook then directs the reader to Chapter 3 for an explanation of what are Clery Act crimes. Chapter 3 contains a section

addressing "aggravated assault," one of the crimes specified in the Clery Act. This section states as follows:

> Aggravated Assault – Hands, Fists, Feet, Etc. – Aggravated Injury. Include only the *attacks* using *personal weapons* such as *hands*, arms, feet, *fists* and teeth that *result in serious or aggravated injury*. *Consider the seriousness of the injury as the primary factor in establishing whether the assault is aggravated or simple*. Classify the assault as aggravated if the personal injury is serious (broken bones, internal injuries or stitches required). On the other hand, classify the offense as a simple assault if the injuries are not serious (abrasions, minor lacerations or contusions) and require no more than usual first-aid treatment.

Chapter 3 also contains a section providing examples of "aggravated assault." One of the examples given is as follows: "Two students are involved in a fist fight in the laundry room in their dormitory. Both have head injuries and are treated at a hospital." This scenario is classified as an aggravated assault.

Similarly, the undisputed record evidence in the instant matter is that the Plaintiff struck Mr. Ratcliffe with his fist (defined as a "personal weapon"), causing Mr. Ratcliffe to fall to the ground, hit his head and suffer serious head injuries. Consequently, the assault satisfies the definition of "aggravated assault" in The Handbook and must be reported by JWU under the Clery Act.

Second, the Clery Act applies because the location of the assault was immediately adjacent to the campus. *See* Providence Street Map attached as **Exhibit 6**. 34 C.F.R. § 668.46(c) provides that the crimes that must be reported are those "concerning the occurrence on campus, in or on noncampus buildings or property, and on public property of the following that are reported to local police agencies or to a campus security

authority. . . (iv) Aggravated assault." "Public property" is defined in 34 C.F.R. § 668.46(a) as "All public property, including thoroughfares, streets, sidewalks, and parking facilities, that is within the campus, or immediately adjacent to and accessible from the campus." As shown by the JWU Unusual Incident Report (**Exhibit 3**), the Witness Statement of Elyse Okalita (**Exhibit 4**) and the map (**Exhibit 6**), the assault took place immediately adjacent to campus property. Accordingly, the location was within the Clery Act parameters for crime reporting. *See also* deposition testimony of Barbara Bennett attached as **Exhibit 1** at p. 44, 1-8 through p. 45, l. 18, p. 46, l. 4 through 49, l. 7, (discussing the location of the crime as a factor in a Clery Act "Crime Alerts").

JWU had a qualified privilege to publish the statements in the Crime Alert because it had a legal duty to do so under the Clery Act. However, even assuming *arguendo* that the Clery Act somehow did not apply, JWU still had a qualified privilege under governing case law because it had a moral and a social duty to publish the statements in the Crime Alert. It was reported to the JWU Department of Campus Safety and Security that an assault had taken place across the street from campus buildings, that a knife was shown, and that Mr. Ratcliffe suffered serious head injuries. Even in the absence of the mandate of the Clery Act, JWU still had a moral and social duty to publish the Crime Alert for the purpose of ensuring the safety of its students as it would have been appropriate for JWU to warn students of the circumstances and possible danger. Therefore, whether under a legal duty theory, or a moral and social duty theory, JWU had a qualified privilege to publish the statements in the "Crime Alert."

## V. <u>Plaintiff's Argument with Respect to the Malice Requisite to Overcome JWU's Qualified Privilege Is Without Merit</u>

The Plaintiff argues that JWU acted with the malice requisite to overcome its qualified privilege because the Dean of Students, Ronald Martel, ("Dean Martel") allegedly called the Plaintiff "a liar" and allegedly called members of the Plaintiff's fraternity "thugs." This argument is without merit for two reasons. First, the statements by Dean Martel are alleged to have been made *after* the publication of the Crime Alert. Therefore, any such statements even if made could not be evidence of ill will or malice on the part of the drafters of the "Crime Alert" because the statements were alleged to have been made after the fact. In addition, whether or not Dean Martel made the statements to the Plaintiff as alleged, there is no evidence in the record that Dean Martel made any such statements to anyone at the Department of Campus Safety and Security or anyone responsible for drafting the "Crime Alert." Whatever statements Dean Martel may or may not have made to a Plaintiff cannot demonstrate ill will or malice on the part of the drafters of the "Crime Alert."

The Plaintiff also argues that according to the deposition testimony of Dean Martel, previous "Crime Alerts" involving students who had allegedly committed a crime did not reveal the students' names. This argument is also without merit. First, Barbara Bennett explained during her deposition that when JWU knew the name of the student who allegedly committed a crime, the name was reported. In fact, there was another instance in which a Crime Alert published the name of a student. *See* Portions of Barbara Bennett Deposition attached as **Exhibit 1**, p. 14, l. 16-19, and Crime Alert, Aggravated Assault referring to Stephen Alegria attached as **Exhibit 2**. Attorney Bennett also explained that when the previous "Crime Alerts" that involved students who had

allegedly committed a crime did not reveal the student's name, it was because JWU did not know at the time of the publication of the "Crime Alert" that a JWU student had been involved. Rather, it was not until sometime after the publication of the "Crime Alert" that JWU learned that a JWU student had been involved. *Id.* at p. 19, l. 3 through p. 21, l. 13. Therefore, JWU's actions do not demonstrate the ill will, malice or spite sufficient to overcome JWU's qualified privilege.

## VI. <u>Plaintiff's Argument With Respect To The Malice Requisite To Support A Claim For Punitive Damages Is Without Merit</u>

In its Memorandum of Law in Support of its Motion for Summary Judgment, JWU explained in detail the malice required to support a claim for punitive damages under the United States Supreme Court case law, as well as the more stringent standard under Rhode Island law, which requires conduct amounting to "willfulness, wickedness or recklessness … that amount[s] to criminality." The Plaintiff has not provided any new argument or controlling authorities to support a claim for punitive damages. Therefore, JWU rests on the arguments previously asserted.[2]

[2] Plaintiff argues that because the panel members knew the Plaintiff had been found not responsible on the weapon offense, that knowledge can and should be imputed to the Department of Campus Safety and Security which issued the "Crime Alert." Even assuming, *arguendo*, that under certain circumstances knowledge of one university official may be imputed to another university official for purposes of establishing, for example, a negligence standard, it is very different to try to impute knowledge for the purposes of satisfying a malice and punitive damages standard. Plaintiff offers no authority to suggest that such an "imputed knowledge" standard for punitive damages is proper under Rhode Island law. Nevertheless, "imputed knowledge" or not, there is no evidence to establish the kind of wanton, willful, malicious conduct amounting to criminality to warrant the imposition of punitive damages.

## VII. Plaintiff's Argument with Respect to the Breach of Contract Claim is Without Merit

Plaintiff's argument with respect to the breach of contract claim is without merit. The Plaintiff suggests that JWU breached its contract with him because Dean Martel allegedly told Veera Sarawgi, the Appeals Officer, "all about the case" and allegedly advised her that he saw no reason why the Plaintiff's dismissal was not justified. This argument is without merit. Ms. Sarawgi had the authority as the Appeals Officer to review the sanction imposed by the board. Therefore, because Dean Martel had met with the Plaintiff and his mother after the panel made its decision, it would have been reasonable for Ms. Sarawgi to inquire whether there was anything unknown to her that could affect the imposition of the sanction of dismissal (and possibly *lessen* the sanction that was already determined by the panel). Additionally, the Plaintiff suggests that JWU breached its contract with him because Dean Martel had this conversation with Ms. Sarawgi after he had called the Plaintiff "a liar" and his fraternity members "thugs." This argument is also without merit because there is no evidence in the record that Dean Martel made those statements to Ms. Sarawgi. Therefore, whatever Dean Martel may or may not have said to the Plaintiff has no relevance to the decision that Ms. Sarawgi made with respect to affirming the Plaintiff's dismissal. The Plaintiff's arguments in no way support a claim that JWU breached a contract with the Plaintiff.

## CONCLUSION

For all of the foregoing reasons, JWU requests that this Court enter summary judgment against the Plaintiff and on behalf of JWU as to all counts of Plaintiff's Amended Complaint.

Dated: December 15, 2006

DEFENDANT,
JOHNSON & WALES UNIVERSITY
By its attorneys,

/s/ John A. Tarantino
JOHN A. TARANTINO, #2586
jtarantino@apslaw.com
PAUL V. CURCIO, #1965
pcurcio@apslaw.com
KATY A. HYNES, #6659
khynes@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of December, 2006, I did send a true copy of the within Johnson & Wales University's Reply Memorandum in support of its Motion for Summary Judgment **by electronic means (ECF)** to the following attorney of record: John R. Mahoney, Esq., Asquith & Mahoney, LLP, 155 South Main Street, Suite 202, Providence, RI 02903.

/s/ John A. Tarantino

*402315_1.doc*