UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER HAVLIK

VS. C.A. NO.: 05-510-ML

JOHNSON & WALES UNIVERSITY

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANT, JOHNSON & WALES UNIVERSITY's MOTION FOR SUMMARY JUDGMENT**

## I. BACKGROUND

On April 5, 2007, the attorneys representing the parties in this case and Chief Justice Lisi of the Rhode Island Federal District Court had a telephone conference during which the parties were requested to address the specific location where an incident involving Donald Ratcliffe and the plaintiff, Christopher Havlik, occurred. It is understood by the parties that the location of the incident is critical to a determination as to whether the Cleary Act, 20 U.S.C. § 1092, et. seq. is applicable to the plaintiff's claim.

## II. ARGUMENT

Technically, there is no agreement between the parties as to precisely where the altercation involving Donald Ratcliffe and the plaintiff, Christopher Havlik, occurred on or about September 16, 2004. However, for the reasons that are forthcoming, the failure to stipulate to a precise location pertaining to this incident is legally immaterial. The Real Estate Title Examiner, John E. Fornaro, Jr., who executed the Affidavit attached to this Supplemental Memorandum, was advised as to where the altercation took place consistent with Christopher Havlik's deposition testimony on June 13, 2006. Attached to this Supplemental Memorandum are pages 12 and 13 of Mr. Havlik's deposition testimony.

It is clear from the plaintiff's deposition testimony that the altercation occurred on a sidewalk on Richmond Street that was either adjacent to a lot owned by Johnson & Wales University or Griffin Realty Enterprises, Inc.

The United States Code 20 U.S.C. § 1092 (6)(A)(i) defines the term "campus". The definition of "campus" is essential to understanding the definition given by the same statute to the term "public property". (20 U.S.C. § 1092 (6)(A)(iii).

The term "campus" is defined in 20 U.S.C. § 1092 (6)(A)(i):

(I) Any building or property owned or controlled by an institution of higher education within the same reasonably contiguous geographic area of the institution[1] and used by the institution in direct support of, or in a manner related to, the institution's educational purposes, including residence halls; and
(II) property within the same reasonably contiguous geographic area of the institution[2] that is owned by the institution but controlled by another person, is used by students, and supports institutional purposes (such as a food or other retail vendor).

The drafters of the applicable Federal statute made it abundantly clear that the definition of the word "campus", whether it be buildings or property owned or controlled by the institution, has to be "within the same reasonably contiguous geographic area of the institution" . . . Webster's New Riverside University Dictionary, 1984, defines the word "contiguous" as follows: *sharing a boundary or edge . . . touching.*

There is a distinction in the Federal statute between buildings and property owned or controlled by the university that falls within the definition of "campus" and "non-campus building or property". 20 U.S.C. § 1092 (6)(A)(ii) defines the terminology "non-campus building or property". The chief distinction between "campus" owned buildings or property and "non-campus owned building or property" is that said buildings or property in a campus are within the same reasonably contiguous geographic area of the institution and "non-campus buildings and property" are not within the same reasonably contiguous geographic area of the institution.

1, 2 – underlined for emphasis

The terminology "public property" is defined in 20 U.S.C. § 1092 (6)(A)(iii). Clearly, the definition of "public property" can include sidewalks. The question is where the sidewalks have to be located to be included within the aforementioned definition. A sidewalk has to be within the same reasonably contiguous geographic area of the institution. In other words, the sidewalk has to be on the campus. If the sidewalk is adjacent to a non-campus building or property it does not fall within the definition of "public property" as that term is defined by the Federal statute.

Was the sidewalk on Richmond Street, where this incident occurred, whether adjacent to a lot owned by Johnson & Wales and used as part of a parking lot, or whether adjacent to a lot owned by Griffin Realty Enterprises, Inc. also used as a parking lot, part of the Johnson & Wales University campus? The answer is an unequivocal no.

A review of the maps submitted by Johnson & Wales University and the annotated map prepared by Mr. Fornaro demonstrate that all of the property designated with a green dot are owned by Griffin Realty Enterprises, Inc. and are used for purposes of operating a parking lot. Lot 495, owned by Johnson & Wales, is also used as a parking lot. Lots 489, 490 and 494 are not even owned by Johnson & Wales or Griffin Realty Enterprises, Inc. (Exhibit B is the annotated map prepared by Mr. Fornaro.)

What we are left referring to, whether owned by Johnson & Wales or Griffin Realty Enterprises, Inc., is a parking lot adjacent to which the sidewalk in issue is located. Under no circumstances does this parking lot constitute a campus as that term is defined by the Federal statute.

The defendant attempts to draw an impermissible and unsubstantiated legal conclusion from the Affidavit executed by Christopher O. Placco, who is apparently the Vice President of Facilities Management for the Providence campus of Johnson & Wales, and Charles S. Meyers, the President of MetroPark, Ltd. Both affiants suggest that Griffin Realty Enterprises, Inc. is a

wholly owned and controlled subsidiary of Johnson & Wales University. Attached to this Memorandum and marked as "Exhibit C" is documentation regarding Griffin Realty Enterprises, Inc. obtained online from the Secretary of State's Office. It is clear, from a review of this Secretary of State documentation, that Griffin Realty Enterprises, Inc. is a separate and distinct corporation from Johnson & Wales University. Griffin Realty Enterprises, Inc. is a corporation whose purpose is "the purchase, sale, rental and leasing of real property".

The University also attempts to confuse the issue by alleging that University representatives remove snow from the sidewalk in issue and maintain the sidewalk. Attached to this Memorandum is the applicable City of Providence code which clearly requires any owner of any building or lot bordering upon the street to, at the conclusion of a snow fall, remove the snow from the sidewalk. (Article 3, § 23-13; see "Exhibit D".)

The same ordinance places the Director of Public Works in Providence with full power and authority to superintend, order and direct the building and altering of any sidewalk in the City, the materials to be used and the time within which said building or alteration shall be made. (Article 3, Section 23-59; see "Exhibit D".)

On the one hand, Johnson & Wales University professes to do no more than is required of them by the City of Providence's ordinance, ie. remove snow. On the other hand, if Johnson & Wales, without elaboration or documentary detail, does more than remove snow from the sidewalk, it does so notwithstanding the fact that it is the City of Providence who has the legal obligation to do so.

It is obvious why the University has attempted, in its' annotated map, to highlight in yellow all of the property that is used as a parking lot even though most of that property is owned by Griffin Realty Enterprises, Inc. The yellow shaded area for the property owned by Griffin Realty Enterprises, Inc. gives one the false impression that that person is looking at a campus. Is Johnson & Wales University suggesting that if an incident occurred on the Griffin Realty

Enterprises, Inc. property that the University would be subject to liability? One readily understands that the University would shield itself from any liability that might occur as a result of an incident on the Griffin Realty Enterprises, Inc. parking lot because the later corporation is a distinct corporate entity from that of the University. The two corporations have vastly different business purposes. In fact, from the Affidavit of Mr. Meyers, it is obvious that there is some leasing arrangement between Griffin Realty Enterprises, Inc. and MetroPark. The nature and extent of this lease is left unexplained.

III. CONCLUSION

This incident occurred on a sidewalk on Richmond Street either adjacent to property owned by Johnson & Wales University or Griffin Realty Enterprises, Inc. Lot 495 abuts or is contiguous to Lot 494 which is a non-owned University restaurant. Part of Lot 495 is also contiguous to Lots 492 and 447 which are owned by Griffin Realty Enterprises, Inc. In the immediate area of this incident, Lots 489 and 490 are owned by parties other than Johnson & Wales University and Griffin Realty Enterprises, Inc. It is a stretch of unimaginable faith to determine that these parcels of land, used exclusively as a parking lot and owned by different corporations, are part of the Johnson & Wales campus. Since sidewalks are only considered "public property" under the statute if they fall within the campus, ie. "within the same reasonably contiguous geographic area" of the institution, the sidewalk in issue is not governed by this statute.

For the foregoing reasons, this Federal statute has to be construed by giving it its clear and ordinary meaning. This interpretation would require a sidewalk to fall within the campus to be considered "public property". The sidewalk on Richmond Street where this altercation occurred may, in fact, have been adjacent to a Johnson & Wales University lot or a Griffin Realty Enterprises, Inc. lot. In either case, neither one of these locations would fall within Johnson & Wales University campus, as the word "campus" is defined in the statute.

If the incident occurred next to Lot 495, owned by the University, this property, if at all, would be a non-campus building or property according to the statute. Sidewalks adjacent to non-campus property do not fall within the definition of public property. If the incident occurred on a sidewalk adjacent to a lot owned by Griffin Realty Enterprises, Inc., the Federal statute would have no application.

CHRISTOPHER HAVLIK,
BY HIS ATTORNEY,

/s/ JOHN R. MAHONEY, ESQ.

JOHN R. MAHONEY, ESQ. - #1940
ASQUITH & MAHONEY, LLP
155 SOUTH MAIN STREET, 2nd FLOOR
PROVIDENCE, RI 02903
(401) 331-5353 – Telephone
(401) 331-7373 – Fax

CERTIFICATION

I hereby certify that on the 1st day of May, 2007 I electronically filed the within to:

John A. Tarantino, Esq.
Adler, Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903 – 1345

/s/ JOHN R. MAHONEY, ESQ.

JOHN R. MAHONEY, ESQ. - #1940
ASQUITH & MAHONEY, LLP
155 SOUTH MAIN STREET, 2nd FLOOR
PROVIDENCE, RI 02903
(401) 331-5353 – Telephone
(401) 331-7373 – Fax

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

CHRISTOPHER HAVLIK

VS. C.A. NO.: 05-510-ML

JOHNSON & WALES UNIVERSITY

**AFFIDAVIT**

1. I, JOHN E. FORNARO, JR. upon oath depose and say that I am an experienced real estate Title Examiner in the State of Rhode Island and have been doing such work during the last 36 years. I was asked by Attorney John R. Mahoney to examine the ownership of certain real estate in the City of Providence at and in the vicinity of the southwest corner of Pine Street and Richmond Street in Providence.

2. After having examined pertinent Land Evidence and Tax Assessor's records of the City of Providence, I prepared an annotated map which depicts the record ownership of several lots in the area as of September 16, 2004. The red dot is placed on the sidewalk on Richmond Street adjacent to Lot 495, whose borders are outlined in yellow and which is owned by Johnson & Wales University, Inc., at the location where Attorney Mahoney advised me the incident involving his client occurred on or about September 16, 2004. The other lots whose numbers are highlighted in yellow are owned by Johnson & Wales University. The lots marked with a dark green dot are owned by Griffin Parking Enterprises, Inc. The lots crossed out with an "X" are owned by entities other than Johnson & Wales University and Griffin Parking Enterprises, Inc.

John E. Fornaro, Jr.

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn to before me this 1st day of May, 2007.

Notary Public
My Commission Expires 6/23/11